# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

STEPHEN D. NOLAN,

      Plaintiff,

      v.

WARDEN JEFF NINES, *et al.*,

      Defendants.

Civil Action No. BAH-23-884

## MEMORANDUM OPINION

On March 30, 2023, Plaintiff Stephen D. Nolan ("Plaintiff" or "Nolan"), who is presently incarcerated at Western Correctional Institution ("WCI"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 raising claims related to an incident which occurred while he was incarcerated at North Branch Correctional Institution ("NBCI"). ECF 1. As Defendants, Nolan names WCI Warden Jeff Nines, Assistant Warden Keith Arnold, and Correctional Officer ("CO") Keith Markle (collectively the "Defendants"). *Id.* at 1. Nolan filed documents which were construed as supplements to his complaint on April 11, 2023 (ECF 5) and May 5, 2023 (ECF 7).

On December 1, 2023, Defendants filed a motion to dismiss or, alternatively, for summary judgment. ECF 31. Nolan opposed Defendants' motion. ECF 39.

Nolan filed several additional motions which are pending at this time: a motion for the appointment of counsel (ECF 29); a motion for default judgment (ECF 33); a "motion for 30-day extension and intention to defend" (ECF 34); a "motion to remove one defendant" (ECF 36), and a document which appears to contain both a motion for discovery and a motion for summary judgment (ECF 40).

The Court has reviewed the filings and finds a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons stated below, Defendants' motion to dismiss, or in the alternative, for summary judgment is **GRANTED IN PART AND  DENIED IN PART**.  Nolan's additional motions will be addressed *infra.*

## I.   BACKGROUND

In his verified complaint[1] Nolan alleges that he suffers from severe back problems, and has had four surgical procedures, three of which he describes as "fusions."  ECF 1, at 5.  He states that he has a deteriorating spine and was medically prescribed the use of a wheelchair for long distance walking to prevent him from "collapsing."  *Id.*  On July 30, 2022, CO Markle denied him the use of his wheelchair "for his 11:30 am service pass,"[2] although Nolan provided documentation of his need, causing "severe pain & suffering."  *Id.*  Further, CO Markle "refused to improvise to get plaintiff to his pass (golf cart, ETC)."  *Id.*  Nolan states that Markle, as a non-medical professional, interfered with his treatment and failed to comply with the medical interventions Nolan required. *Id.*  Nolan maintains these acts caused "harm more than 'de minimis' to plaintiffs back & legs." *Id.*  He argues that CO Markle's conduct amounts to deliberate indifference in violation of his Eighth Amendment rights, as well as a violation of the Americans with Disabilities Act ("ADA"). *Id.*

As to Warden Nines, Nolan argues that he "is responsible for all inmates & employees of North Branch Correctional."  *Id.*  He asserts that Nines showed deliberate indifference by failing

---

[1] *See* ECF 1, at 9.

[2] Nolan is not specific about where he was going, but states that he has an "11:30 a.m. service pass."  ECF 1, at 3.

to assist with Nolan's administrative grievances against Defendants Markle and Arnold, even though Nines was aware of these grievances. *Id.* at 6.

With respect to Assistant Warden Arnold, Nolan alleges that he "showed 'deliberate indifference' by knowing & disregarding plaintiff's medical needs and the ARP." *Id.* Nolan alleges that Arnold knowingly "lied/committed perjury" on an administrative grievance document in an effort to "cover up the arrogant/illegal action that his correctional officer (CO Markle) committed against plaintiff . . . ." *Id.* Nolan alleges that by interfering in the Administrative Remedy Procedure ("ARP") grievance process, Arnold violated Nolan's right to due process and obstructed justice. *Id.*

With respect to the claims outlined above, Nolan proffers exhibits with his complaint to support his allegations. ECF 1-1. He includes a medical document dated June 28, 2022, which memorializes that Nolan has a medical order for wheelchair use "for long distance [for] 90 days." *Id.* at 4. He includes a similar document dated August 3, 2022, which provides an additional 90 days for wheelchair use from that date. *Id.* at 1. Nolan also includes a copy of the logbook for Housing Unit 3-D for July 30, 2022 and alleges that it reflects that CO Markle signed in for the 7:00 a.m. to 3:00 p.m. shift.[3] *Id.* at 5–6. Nolan includes an imaging report of an MRI of his spine and medical records dated January 24, 2023 noting that Nolan had back surgery and requires a lower bunk and a wheelchair. *Id.* at 13–14, 18. Finally, Nolan includes the "Declaration of Inmate David Starkey," who serves as Nolan's "wheelchair pusher." ECF 1-2, at 1. Starkey attests that

---

[3] The Court notes that the handwriting in this logbook is very difficult to read. However, construing the facts most favorably to Nolan, there is a reasonable inference that the name written on the page is CO Markle. *See* ECF 1-1, at 5 (highlighted portion).

3

on July 22, 2022, he observed CO Markle deny Nolan the use of a wheelchair and that Starkey

observed the severe pain it caused Nolan to walk to his service without the wheelchair.[4]  *Id.*

In his complaint, Nolan extensively discusses his efforts to exhaust his administrative

remedies.  ECF 1, at 3–4.  On July 30, 2022, he filed an administrative grievance (known as an

"ARP") with Warden Nines regarding CO Markle's actions.  *Id.*  On August 5, 2022, Assistant

Warden Arnold responded to the ARP.  *Id.* at 4.  According to Nolan, Arnold's response contained

a "lie," more specifically by stating that there was no record of Nolan having a wheelchair order

and in claiming that CO Markle was not working at the time of the alleged wheelchair denial

incident.  *Id.*  On August 6, 2022, Nolan states that he submitted an ARP appeal to the

Commissioner of Correction.  *Id.*  On August 9, 2022, Nolan submitted an amended ARP with the

correct spelling of CO Markle's name.  *Id.*  After receiving no response, he appealed to the Inmate

Grievance Office ("IGO") on September 21, 2022.  *Id.*  On January 4, 2023, the IGO denied

Nolan's appeal, stating he improperly filed his IGO appeal before he received a response from the

Commissioner of Correction.  *Id.*  Nolan wrote to the IGO "numerous times" explaining that he

has "limited access to contacting the [Commissioner of Correction]."  *Id.*  Also on January 4, 2023,

Nolan filed for judicial review in the Circuit Court for Allegany County, which was denied on

February 17, 2023, "for not being able to fully exhaust remedies (no [Commissioner of

Corrections] response.)"  *Id.*

---

[4] On April 11, 2023, Nolan submitted an amended version of Starkey's declaration, which was construed as a supplement to the complaint.  ECF 5.  Nolan indicates he submitted this amended version because the original contained the incorrect housing tier for Starkey.  ECF 5-1.  The Court has reviewed both declarations and finds them to be substantially similar, and with the exception of the correction of the housing tier, they contain the same substantive information.  *See* ECF 5; ECF 1-2.

Along with the allegations in his complaint, Nolan includes exhibits regarding his efforts to exhaust his claims.  First, he includes a copy of ARP number NBCI-1394-22, dated July 30, 2022, in which he raises the claim that CO Markle denied him access to a wheelchair.  ECF 1-1, at 2.  The ARP contains a response from Assistant Warden Arnold, which found the allegations to be without merit because records did not reflect that CO Markle was working that day, nor did Nolan have an active medical order for a wheelchair.  *Id.*  Nolan also includes a copy of an ARP dated August 9, 2022.  *Id.* at 8.  Although the institution assigned this ARP number NBCI-1516-22, Nolan indicates that he intended the document to be an amendment to his previously-filed ARP (NBCI-1394-22).  *Id.*  In this document Nolan presents similar information to his earlier submission, but notes that he filed the amendment to correct the spelling of CO Markle's name.  *Id.* at 8–9.  This ARP was procedurally dismissed as repetitive.  *Id.* at 8.

Next, Nolan includes a letter from the IGO dated December 7, 2022.  *Id.* at 16.  The letter is in response to Nolan's appeal of his grievance numbered NBCI-1394-22.  *Id.*  The letter states that Nolan's grievance is without merit for failing to fully exhaust the administrative remedy procedure and states that Nolan has failed to comply with certain required procedures for review.  *Id.*  Specifically, it states that Nolan failed to provide "a copy of all ARP paperwork" as required.  *Id.*  Additionally, the letter states that "the IGO has independently inquired of the Commissioner's Office whether an ARP appeal was received in this case, and the Commissioner's Office has responded that they have not received an ARP appeal under this ARP number."  *Id.*  On that basis, the IGO concluded that Nolan has failed to properly exhaust his administrative remedies and administratively dismissed his grievance.  *Id.* at 16–17.  Finally, Nolan includes a copy of a court order from the Circuit Court for Allegany County dismissing his Petition for Judicial Review

because he failed to "submit the proof necessary to demonstrate that [Nolan] has fully exhausted the administrative remedies available before seeking review." *Id.* at 7.

In his complaint, Nolan seeks declaratory and injunctive relief, as well as monetary damages. ECF 1, at 1, 8–9. More specifically, he seeks a declaration from the Court that the events described above violated the Constitution. *Id.* at 8. With respect to injunctive relief, Nolan seeks the resignation of Arnold, termination of CO Markle's employment, "proper" investigation of all ARPs by Warden Nines, as well as various legal and professional training for Defendants and other correctional personnel. *Id.* at 8–9.

In addition to his complaint, Nolan submitted two documents to the Court which were construed as supplements to his complaint. *See* ECFs 5, 7. The first, as noted above, is an amended version of Starkey's declaration. ECF 5. The second is a completed version of the Court's pro se civil rights complaint form. ECF 7, at 1–6. This document provides substantially similar information to that contained in the original complaint, and the Court discerns no additional information from it that had not been previously included in other filings. *Id.*

Defendants responded to Nolan's complaint on December 1, 2023. ECF 31. In their motion to dismiss or, alternatively, for summary judgment, they argue that Nolan failed to exhaust administrative remedies. *Id.* Citing the documentation provided by Nolan, they argue that "Plaintiff's ARPs arising from the alleged incident with CO Markle, fail to identify any wrongdoing by either the Warden or the Assistant Warden." ECF 31, at 12. Thus, Defendants conclude that claims against Defendants Nines and Arnold are not exhausted. *Id.* Further, Defendants argue that "*all* of Plaintiff's claims [are] unexhausted, because he failed to appeal the dismissal of his ARPs to the Commissioner of Correction." *Id.* (emphasis in original). Defendants cite the letter from the IGO provided with Nolan's complaint, ECF 1-1, at 16, and the appeal of

the dismissal of Plaintiff's inmate grievance to the Circuit Court for Allegany County, *id.* at 7, in support of their argument that Nolan's claims are unexhausted.

In addition, they provide the declaration of Kristina Donnelly, Special Assistant to the Director of Patuxent Institution dated December 1, 2023. ECF 31-2, at 1 ("Donnelly Declaration"). Donnelly states that in her position she has "access to requests for administrative remedies ('ARPs') that are appealed by prisoners throughout the Maryland Division of Correction to the Commissioner of Correction." *Id.* ¶ 1. She further states that the "Headquarters Administrative Remedy Procedure (ARP)/Inmate Grievance Program (IGP) Unit maintains a database record of ARP appeals filed from 2009 to the present." *Id.* ¶ 2. She avers that "[a] search of the available records did not produce any record of the Headquarters Administrative Remedy Procedure (APR [sic])/Inmate Grievance Process (IGP) Unit having received an ARP appeal from incarcerated person, Stephen D. Nolan, 441250, specific to ARP #NBCI 1394-22." *Id.* ¶ 3. Curiously, the declaration states that Donnelly attached institutional records and verifies their accuracy, however no records were submitted with the Donnelly Declaration. *Id.* ¶ 4. Based on the documentation submitted by Nolan and the Donnelly Declaration, Defendants conclude that "[a]lthough Plaintiff contends that he appealed his ARP to the Commissioner, and that the Commissioner failed to respond, this is incorrect." ECF 31-1, at 4. Thus, Defendants argue that Nolan's claims are unexhausted and must be dismissed. *Id.* at 9.

Further, Defendants argue that Nolan's complaint must be dismissed because he has failed to state a claim against Defendants. ECF 31-1, at 14. Specifically, they argue Nolan has failed to plead facts supporting personal liability or supervisory liability of Defendants Nines and Arnold. *Id.* at 14–18. Additionally, they argue Nolan has failed to state a claim against Assistant Warden

Arnold for a violation of procedural due process. *Id.* at 18–19. Finally, Defendants argue that Nolan has failed to state a claim against CO Markle under the ADA. *Id.* at 19–20.

Nolan opposed Defendants' motion. ECF 39. As is relevant to the question of exhaustion, Nolan submits a verified declaration in which he states that on August 6, 2022, he sent an appeal of his grievance to the Commissioner of Correction. *Id.* at 2. When he received no response, Nolan alleges he appealed to the IGO. *Id.* Nolan also argues that genuine issues of material fact exist which make the entry of summary judgment inappropriate. *Id.* at 3–5.

## II.    STANDARD OF REVIEW

In reviewing the complaint (and supplements) in response to a motion made pursuant to Fed. R. Civ. Proc. 12(b)(6), the Court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to Nolan. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

However, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, a complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing

any set of facts consistent with the allegations in the complaint." *Id*. at 563.  To survive a motion

to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting

*Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. at 678.  "But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Although Defendants have submitted exhibits with their motion, when deciding a motion

to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached

documents.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.

2007).  Rule 12(d) requires courts to treat such a motion as a motion for summary judgment if

matters outside the pleadings are considered and not excluded.  *See* Fed. R. Civ. P. 12(d).  Before

converting a motion to dismiss to one for summary judgment, the trial court must give the

nonmoving party "a reasonable opportunity to present all the material that is pertinent to the

motion."  *Id.*  "Reasonable opportunity" has two requirements: (1) the nonmoving party must have

some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment;

and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain

information essential to oppose the motion.  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' motion, which

clearly announces that it seeks summary judgment.  ECF 31, at 1. To show that a reasonable

opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or

declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot

present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244–45 (4th Cir. 2002).  Plaintiff has not done so here.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249–50.

Defendants assert in their motion that Nolan failed to exhaust the grievance process and has also failed to state a claim for relief.  ECF 31.  The motion includes an exhibit that relates

specifically to Nolan's efforts to exhaust the grievance process.  ECF 31-2.  Because the Court considers this exhibit, the motion will be construed as a motion for summary judgment as to the question of exhaustion.  With respect to the remaining arguments, Defendants present no evidence and argue only that Nolan has failed to state a claim for relief.  Thus, as to those arguments the motion will be construed as a motion to dismiss.

## III.   DISCUSSION

### A.  Exhaustion

Defendants assert that the complaint should be dismissed because Nolan failed to exhaust the grievance process as to the claims in the complaint.  If Nolan's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Typically, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland state prisoners for

"inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S.") §§ 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. Md. Code Ann., C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO[5] against any DOC official or employee. *Id.* § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *Id.* § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.07.01.05B 2.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for

---

[5] The Inmate Grievance Office was renamed Incarcerated Individual Grievance Office by operation of state law effective on October 1, 2023. Md. Code, C.S. § 10-201. However, because Nolan utilizes the previous name, Inmate Grievance Office, the Court will utilize the same name for clarity.

management of the correctional facility" and defined under Md. Code Ann., C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Corrections.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[6]  COMAR 12.02.28.18; Md. Code Ann., C.S. § 10-206(a); COMAR 12.07.01.05(B).  When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing."  Md. Code Ann., C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  Md. Code Ann., C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge ("ALJ") with the Maryland Office of Administrative Hearings.  *See*

---

[6] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

Md. Code Ann., C.S. § 10-208; COMAR 12.07.01.07–08.  Such hearings are governed by statute.
*See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the ALJ denying all relief to the inmate is considered a final agency determination.  Md. Code Ann., C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* COMAR 12.07.01.10(B); Md. Code Ann., C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies.  *See* Md. Code Ann., C.S. § 10-210.  An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes.  These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see also Moore*, 517 F.3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all

four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo*, 286 F.3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Against this backdrop, Defendants argue that all of Nolan's claims are unexhausted, requiring dismissal. The Court disagrees. Here, Defendants submit only one brief declaration averring that no appeal was ever received by the Commissioner of Correction with respect to ARP number NBCI-1394-22. ECF 31-2, at 1. Defendants also rely on the documents provided by Nolan with his complaint. Nolan outlines in his verified complaint, as well as in his verified response, the various lengths he went to in order to attempt to exhaust his claims. He repeatedly maintains that he sent an appeal to the Commissioner of Correction, but never received a response. Thereafter, having received no response, Nolan claims that he appealed to the IGO and sought judicial review.

Defendants conclude that Nolan's assertion that he appealed to the Commissioner is "incorrect." ECF 31-1, at 4. In support of this claim, they proffer no additional evidence, but surmise solely from the documents provided by Plaintiff that exhaustion of remedies is incomplete. Further, Defendants could have, but did not, produce additional declarations attesting to the fact that Nolan did not file any other relevant ARPs regarding his claims. The lone declaration provided by Defendants does not discuss the other ARP Nolan submitted with his complaint, NBCI-1516-22. As such, the Court is not certain as to what happened with NBCI-1516-22. Nolan maintains that his claims are exhausted and attests to this fact under the penalties of perjury.

Without evidence to support their affirmative defense, the Court cannot conclude at this stage that Nolan's claims are unexhausted.  Summary judgment is denied as to Defendants' exhaustion defense and the Court will reach the merits of Nolan's claims.

### B.  Warden Nines

Defendants argue that Nolan does not state a claim against Warden Nines and similarly claim that Nolan fails to plead facts supporting supervisory liability. ECF 31-1, at 16.  Nolan has filed a "Motion to Dismiss One Defendant" in which he asks the Court to remove Warden Nines from the case because he agrees that there is "a possible likelihood that the main warden of NBCI had no involvement in this case." ECF 36, at 1.  The Court will grant Nolan's motion and all claims against Defendant Nines will be dismissed.

### C.  Assistant Warden Arnold

Defendants similarly argue that Nolan has not plead any facts substantiating that Arnold was deliberately indifferent to his needs and allege that Nolan has failed to plead facts supporting supervisory liability. ECF 31-1, at 16.  Additionally, Defendants argue that Nolan has failed to state a claim against Arnold for a violation of his right to due process. *Id.* at 18. The Court agrees with both arguments.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To the extent Nolan intended to claim Arnold was deliberately indifferent to his needs and injuries resulted, he fails to do so. The complaint provides no allegations that Arnold was in any way involved with the decision to deny Nolan a wheelchair to attend his service pass on July 30, 2022. Thus, Arnold is entitled to dismissal of those claims against him. The only allegations related to Arnold deal with Arnold's alleged response to Nolan's ARP. Specifically, Nolan alleges that Arnold "lied/committed perjury" in his response. ECF 1, at 4. On this ground, too, Arnold is entitled to dismissal because the complaint fails to raise an allegation of constitutional magnitude.

"[A] claim of constitutional magnitude is raised when a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979), *cert. denied*, 444 U.S. 925 (1979); *see also Almanza v. Wilson*, 1990 WL 13007, at *1 (4th Cir. 1990) (claim is grounded in substantive rather than procedural due process). There are two elements required to demonstrate reliance to a constitutionally significant degree. *Paine*, 595 F.2d at 202. "The first is the nature of the adverse administrative decision made on the basis of erroneous information." *Id.* Specifically,

> If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake

and the due process clause is called into play. Although other administrative actions such as transfer to another penal facility or status classification have been held without the ambit of the due process clause, in many situations an adverse decision in such matters may have collateral consequences touching on the liberty interest. We think a well-pleaded complaint alleging such circumstances would be sufficient. However, we do not think that an administrative decision regarding such purely internal matters as work assignments within the prison would reasonably affect a subsequent decision such as eligibility for parole. Thus an allegation that false information was relied on to make such a decision would not be constitutionally significant. In a close case, however, the benefit of the doubt should be given the inmate.

*Id.* (citations omitted).   The second consideration is "the nature of the false information."  *Id.*

Here, Nolan alleges that false information was provided by Arnold in response to Nolan's ARP

but Nolan does not allege that the provision of false information impacted Nolan's liberty interests.

If Nolan believed Arnold provided false or misleading information in the ARP, he had the right

(and ability) to appeal that decision.  Indeed, Nolan maintains that he attempted to do just that.

But his complaint essentially ends there.  Nolan has failed to plead or demonstrate that any liberty

interest is at stake such that Arnold's alleged misinformation generated a violation of Nolan's right

to due process.  The Court will grant Arnold's motion to dismiss this claim.[7]

### D.  CO Markle

Defendants do not address Nolan's claim that CO Markle was deliberately indifferent to

his needs or otherwise violated his rights under the Eighth Amendment to the Constitution.  *See*

ECFs 31, 31-1.  As such, this claim against CO Markle must proceed.

Additionally, Nolan claims that CO Markle violated his rights under the ADA.  Defendants

argue that Nolan has failed to state claim under the ADA, by simply stating that "Stephen Nolan

---

[7] To the extent Nolan seeks to bring charges for perjury against Arnold, that relief is unavailable to him as allegations of such violations simply do not create an independent civil cause of action. *See Doe v. Broderick*, 225 F.3d 440, 448 (4th Cir. 2000) (stating that "criminal statutes do not ordinarily create individual rights" and that they "express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation" (citations omitted)).

was not deprived of the opportunity to attend his religious program. He walked there. Therefore, Nolan has failed to state a claim upon which relief can be granted."  ECF 31-1, at 20.

To establish a prima facie case under Title II of the ADA or the Rehabilitation Act, a plaintiff must show that: (1) he/she has a disability; (2) he/she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability.  *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016) (citing *Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 467 (4th Cir. 1999) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)).

Nolan has adequately alleged that he is disabled.  ECF 1, at 5 (claiming he "has severe back problems" and needed to use a wheelchair "due to [his] back [and] legs giving out (collapsing) when walking certain distances" and also alleging "deteriorating spine" and "spinal stenosis").  As to his alleged exclusion from a program or service, it is important to note that Nolan's complaint does not allege that he was outright denied participation in any service, program, or activity based on any disability, but rather states that on one occasion CO Markle failed to comply with a medical order to provide Nolan with a required wheelchair to facilitate his attendance or participation.  *Id.* at 3.  He appears to allege that he was still able to attend the program at issue, albeit not without experiencing "severe pain and suffering [after] being forced to walk."  *Id.* at 3.  CO Markle appears to argue that because Nolan was ultimately able to attend the program without his wheelchair, he fails to allege that he was denied the services of the program *because of his disability*.  ECF 31-1, at 20.  The case of *Koon v. North Carolina*, 50 F.4th 398, 405–06 (4th Cir. 2022) compels a different conclusion.

20

There, "a disabled prisoner [Koon] who walks with a cane, . . . was denied a handicap pass to access the first-floor library for seven months . . . [and] was forced to climb two flights of stairs to get to the general-population library." *Id.* at 400.  In addressing a motion for summary judgment, the *Koon* Court affirmed that "disability 'discrimination' includes not just 'outright intentional exclusion' but also lesser injustices like 'failure to make modifications to existing facilities and practices' and 'relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.'" *Id.* at 405 (citing 42 U.S.C. § 12101(a)(5)).  As such, "disability discrimination includes the failure to provide reasonable modifications that would make accommodations accessible to the disabled without causing an undue burden to the program." *Id.*  at 406.

The Fourth Circuit continued by affirming that in the context of prison programming, the relevant inquiry is "whether a disabled inmate was denied 'meaningful access' to the benefit." *Id.* (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).  "And because 'meaningful access' is the standard, *it is not a complete defense to say that some disabled prisoners overcame the hurdle*." *Id.* (emphasis added) (citing *Nat'l Fed. of the Blind*, 813 F.3d at 506).  Of course, "even where 'meaningful access' is denied, a public entity need not make 'fundamental' or 'substantial' modifications to accommodate a disabled inmate; they must only make 'reasonable' accommodations." *Id.*  The Court continued:

> The line between the reasonable accommodation and the substantially burdensome accommodation may not be obvious in all cases but giving a prisoner access to the first-floor library is comfortably on the reasonable side of the line.  And Koon has at the very least created a genuine issue of fact on the issue of a denial of "meaningful access," given the evidence he has put forward about the pain and physical damage caused by going up and down the stairs to the general-population library.

*Id.*  As CO Markle appears to do here, "North Carolina half-heartedly argue[d] in its brief that because Koon physically got himself to the general-population library, he was not denied

meaningful access to the benefit." *Id.*   The Fourth Circuit rejected this argument, however, observing:

> that fact alone cannot resolve the genuine issue of material fact on meaningful access.  If a prisoner without the use of his legs left his wheelchair at the bottom of the stairwell and crawled up to the library, no one would doubt it was a denial of meaningful access. . . . The question is whether the pain and challenge of accessing the library was such that it denied him meaningful access, which would look to the amount of pain he really felt, what damage was done, and so on, and Koon has done enough to make a fact issue of that question.

*Id.*

Here, Nolan claims that Markle was deliberately indifferent to his medical needs and interfered with his meaningful access to programming by denying him access to his wheelchair. ECF 1, at 3–6.  He, like the plaintiff in *Koon*, alleges that this discrimination manifested itself in CO Markle's refusal to facilitate Nolan's access to certain services that he was nonetheless able to attend.  Given the clear language in *Koon*, that Nolan may ultimately have attended or received the services without the use of his requested wheelchair does not mean Nolan has failed to plead the denial of "meaningful access" to those services.  And given that the alleged denial of access is based on the failure to allow him to us a required wheelchair—a device obviously necessary to ameliorate the effects of a spine-related disability—he has successfully pled that the exclusion, denial of benefits, or discrimination was by reason of his disability.  As such, the Court will deny CO Markel's motion to dismiss the ADA claim.

## IV.   ADDITIONAL MOTIONS

### A.  Motion for the Appointment of Counsel (ECF 29)

Nolan moves this Court for the appointment of counsel.  ECF 29, at 1–2.  In support thereof, he cites his indigency, his lack of familiarity with the law, and his previous reliance on a "jailhouse lawyer" who has since transferred facilities and can no longer assist him.  *Id.* at 1.

Appointed counsel is proper in exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Exceptional circumstances exist where a plaintiff has a "colorable claim" and, considering the claim's objective complexity and his subjective abilities, the plaintiff "lacks the capacity to present it." *Jenkins v. Woodard*, No. 22-6197, 2024 WL 3490967, at *4 (4th Cir. July 22, 2024); *see also Whisenant v. Yuam*, 739 F.2d 160, 162 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Given the circumstances proffered by Nolan, as well as the fact that his Eighth Amendment claim against CO Markle will proceed to discovery on a complex area of constitutional law, the Court concludes that the needs of the case are best served by appointing an attorney to represent him.

### B.  Motion for Default Judgment (ECF 33)

Nolan moved this Court for the entry of default judgment in a document dated December 3, 2023. ECF 33. Two days prior, on December 1, 2023, Defendants filed their motion to dismiss, or in the alternative, for summary judgment. *See* ECF 31. Presumably, Nolan was unaware that Defendants had filed a responsive pleading when he mailed his motion to the Court.

Placing a party in default involves a two-step process. First, there must be an entry of default by the Clerk pursuant to Rule 55(a), which allows entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Thereafter, a default judgment may be entered pursuant to Rule 55(b). Default judgment is highly disfavored and reserved for those cases where an unresponsive party has halted the adversary process. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Circ. 2010) ("We have repeatedly expressed a

strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.").

Here, there has been no entry of default by the Clerk, rendering default judgment inappropriate.  Even if the Court were to construe this as a request for entry of default, Defendants have responded, and the adversary process has proceeded in due course.  The motion for default judgment is denied.

### C.  "Motion for 30-day Extension and Intention to Defend" (ECF 34)

This document, received for filing on December 19, 2023, contains a number of motions. The Court will address each in turn.

First, Nolan seeks an extension within which to file his opposition response.  Nolan's response was received on January 25, 2024.  The Court has reviewed the motion, and finding good cause shown, grants the motion for an extension *nunc pro tunc*.  Nolan's opposition response has been considered.

Next, Nolan moves this court to "compel" NBCI to allow him to use the law library.  *Id.* at 2–3.  He states that he is often not permitted to use the library on a "staff reduction day," which limits his access to the library.[8]  Nolan successfully filed an opposition response to Defendants' dispositive motion, and as stated above, counsel will be appointed to assist Nolan going forward. Thus, this portion of the motion is denied.

---

[8] Nolan filed two "supplements" to this motion.  *See* ECFs 35, 37.  Both documents provide additional support for an extension premised on difficulties Nolan experienced researching his case and accessing the law library.

Next, Nolan moves for a second time for appointment of counsel.  *Id.* at 4–5.  As stated above, the Court will grant a previous motion and will appoint counsel to represent Nolan on his remaining claims.  Thus, this portion of the motion is denied as duplicative.

Finally, Nolan moves for an order compelling discovery.  *Id.* at 6–7.  Discovery may not commence before a scheduling order has been issued by this Court.  *See* Local Rule 104.4 (D. Md. 2023).  By order accompanying this memorandum opinion, the Court will issue a scheduling Order permitting the commencement of discovery.  The motion is therefore granted to the extent provided by the order.

Thus, as to this motion (ECF 34), it is granted in part as to Nolan's request for an extension, which the Court grants *nunc pro tunc*, and Nolan's request to compel discovery, which is granted to the extent provided by the attached order.  All other requests contained therein are denied.

### D.  Motion for Discovery/Motion for Summary Judgment (ECF 40)

Finally, Nolan filed another multi-motion document, which will be denied without prejudice.  First, Nolan makes a motion for production of documents, interrogatories, and admissions.  ECF 34, at 1–2.  These requests are denied without prejudice.  Counsel will be appointed to assist Nolan with the discovery process.

Finally, Nolan moves for summary judgment.  *Id.* at 3–4.  In support thereof, he provides a brief declaration restating the allegations in his complaint.  *Id.*  Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.  In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.  *Anderson*, 477 U.S. at 255.  Given that the matter boils down to a dispute of fact as to what occurred

on July 30, 2022 and thereafter, Nolan has not met this burden and the motion for summary judgment is denied without prejudice.

**V.   CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss, or in the alternative, for summary judgment (ECF 31) is **GRANTED IN PART and DENIED IN PART**.  Nolan's additional motions are addressed as follows:  his motion for the appointment of counsel (ECF 29) is **GRANTED**, his motion for default judgment (ECF 33) is **DENIED**, his "motion for 30 day extension and intention to defend" (ECF 34) is **GRANTED IN PART** and **DENIED IN PART**, his "Motion to Remove One Defendant" (ECF 36) is **GRANTED**, and his motions for discovery and for summary judgment (ECF 40) are **DENIED** without prejudice.  A separate Order follows.


Date: <u>August 27, 2024</u>                          _____/s/_____
                                                   Brendan A. Hurson
                                                   United States District Judge